IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WANDA L. RUYLE, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
|  | )    CIV-05-1263-L |
| v. | ) |
|  | ) |
| JO ANNE B. BARNHART, | ) |
|   Commissioner of Social Security | ) |
|    Administration, | ) |
|  | ) |
|     Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382.  Defendant has answered the Complaint and filed the administrative record (hereinafter TR___).  Both parties have briefed the issues, and the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings.

I. Background

Plaintiff filed her application for benefits on September 19, 2003, alleging that she

became disabled on February 18, 2003. (TR 49-51, 363-365). Plaintiff alleged disability due to a neck injury with herniated and protruding discs, migraine headaches, a mid-back injury with disc protrusions, and vertebral degeneration. (TR 61). Plaintiff also alleged right arm pain and hearing loss in her right ear. (TR 87). Plaintiff described past relevant work as a registered nurse, medical case manager, and licensed practical nurse. (TR 62). Plaintiff's applications were administratively denied. (TR 27, 28, 366, 370). At Plaintiff's request, a hearing *de novo* was conducted on July 23, 2004, before Administrative Law Judge Jordan ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. (TR 556-619). At her hearing, Plaintiff testified[1] (TR 558-604, 606-607, 609-618) that she was 42 years old, last worked February 18, 2003, and worked as a registered nurse beginning in 1992 until that date, when she was involved in a motor vehicle accident.

Following the hearing, the ALJ issued a decision (TR 16-26) on February 1, 2005, in which the ALJ found that Plaintiff has severe impairments due to degenerative disc disease, anxiety, and depression. Despite these severe impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "occasionally lift/carry 50 pounds and 25 pounds frequently; occasional stooping; no good hearing on the left side; no frequent prolonged extreme pressure, bending or twisting of the spine; is able to carry out simple and detailed instructions but not maintain attention and concentration for extended periods of time, is able to perform at least simple tasks, with regular supervision at the work site; no working alone."

---

[1]Plaintiff was thoroughly advised by the ALJ of her right to representation but voluntarily chose to proceed without representation at the administrative hearing. (TR 558-561).

(TR 22-23). Relying on VE statements procured after the hearing, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act because she retains the ability to perform jobs that are available in the economy, including the jobs of teacher's aide, mail clerk, cashier, food order clerk, and addresser/cutter/paster. (TR 24-25). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council. (TR 5-7). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(*per curiam*). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(*per curiam)*. The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person

might deem adequate to support the ultimate conclusion. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f) (2005); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail). The claimant bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §§404.1512, 416.912 (2005); Turner v. Heckler, 754 F.2d 326, 328 (10th Cir. 1985). Where the plaintiff makes a *prima facie* showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." Turner v. Heckler, 754 F.2d at 328; Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Plaintiff's Claims and Defendant's Response

Plaintiff contends that the ALJ erred at step three by failing to consider whether her severe impairment due to degenerative disc disease satisfied or equaled the requirements of the agency's Listing of Impairments for disorders of the spine, 20 C.F.R. pt. 404, subpt. P, § 1.04 (2005)("Listing 1.04"). Plaintiff further contends that there is substantial evidence in the record showing that Plaintiff's degenerative disc disease satisfies Listing 1.04. Plaintiff

also contends that the ALJ erred in failing to find at step two that Plaintiff has severe right hand and arm impairments and a severe impairment due to migraine headaches. Finally, Plaintiff contends that the ALJ erred in his analysis of the credibility of her complaint of disabling pain.

The Commissioner responds that Plaintiff's degenerative disc disease did not satisfy the requirements of Listing 1.04 because the medical evidence supports a finding that Plaintiff's cervical degenerative disc disease did not meet this listing, and that there is substantial evidence to support the remainder of the ALJ's decision.

IV. Step Two

At step two, the ALJ must determine "whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-141(1987). This determination is governed by the agency's "severity regulation[s]" at 20 C.F.R. §§ 404,1520(c), 416.920(c) (2005). Pursuant to these regulations, the claimant must make a "threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities." Williams v. Bowen, 844 F.2d 748, 750-751 (10th Cir. 1988). This requires a *de minimis* showing of medical severity in that the claimant must only show that the impairment "would have more than a minimal effect on his ability to do basic work activities...." Id. at 751.

Plaintiff contends that she presented sufficient evidence demonstrating the existence of a severe hand and arm impairment and a severe impairment due to migraine headaches. Plaintiff refers to various notations in the medical record indicating she demonstrated weak

grip or decreased sensation in her right hand or arm. However, Plaintiff's argument fails to recognize that other objective evidence in the record was inconsistent with these intermittent medical notations. The medical record reflects that in February 2003 Plaintiff was involved in a motor vehicle accident ("MVA") in which the car in which she was riding was rear-ended by another vehicle while she was wearing a seat belt. (TR 170). Plaintiff sought treatment from her family physician, Dr. Shearer, on February 21, 2003, three days following the MVA. (TR 170). Dr. Shearer noted that a computerized tomographic ("CT") scan of Plaintiff's neck and cervical spine taken at the hospital immediately after the MVA showed some degenerative changes and possible disc herniation but no fracture or dislocation. (TR 170). Dr. Shearer noted that Plaintiff moved all extremities without difficulty and exhibited normal strength. (TR 170). Plaintiff was advised to continue taking muscle relaxant medication prescribed by the emergency room attending physician and she was referred for physical therapy. (TR 170). In April 2003, Dr. Shearer referred Plaintiff to a neurologist, Dr. Reitz. Plaintiff saw Dr. Reitz on April 14, 2003, and he noted she complained of pain and numbness in her face and cervical spine, right shoulder pain, and numbness in two fingers in her right hand. (TR 216). Dr. Reitz conducted a physical examination and noted that Plaintiff exhibited "strong" and "intact" muscle strength and "normal" station and gait and decreased sensory functions "in a patchy distribution in the right arm." (TR 217). Dr. Reitz suggested magnetic resonance imaging ("MRI") testing of Plaintiff's head and neck (TR 217), and after these tests were conducted Dr. Reitz noted he advised Plaintiff she needed a neurosurgical opinion as the cervical spine MRI showed "some narrowing." (TR 215).

Plaintiff saw Dr. Pendleton, a neurosurgeon, on April 29, 2003. The physician noted that Plaintiff described a sudden loss of hearing in her right ear following the MVA, and some right-sided facial numbness, numbness in her right hand, and some lumbar back pain that had resolved. (TR 164). Dr. Pendleton conducted a physical examination and noted that Plaintiff exhibited normal motor strength except for "some giveaway weakness" in grip, biceps, and triceps in her right arm, decreased sensation in her right wrist and hand but normal sensation above the wrist, and normal reflexes. (TR 165). Dr. Pendleton noted he advised Plaintiff that her CT scan showed cervical spondylosis and that her "multiple subjective complaints" were not related to this condition and no surgical intervention was indicated. (TR 165). Plaintiff returned to Dr. Reitz in June 2003 and complained of frequent headaches and cervical pain and pain and patchy numbness in her right upper extremity. (TR 212). Dr Reitz noted that Plaintiff exhibited some breakaway weakness in her upper and lower extremities. Dr. Reitz also noted that her sensory function was reduced "in a patchy distribution that doesn't follow a specific dermatome." (TR 212). He prescribed medication. However, at the next visit in July 2003, Dr. Reitz noted that Plaintiff's sensory functions were "intact to all modalities" and her gait was "excellent" although she exhibited palpable spasm in her cervical region, for which he prescribed medication. (TR 210). The neurologist's office notes indicate that Plaintiff cancelled her next appointment on August 11, 2006, and reported that she had quit taking all medications. (TR 209). Plaintiff sought treatment at a hospital for back pain on August 24, 2003. The attending physician, Dr. Scott, noted that her subjective pain complaints were "certainly more than her examination revealed," that her reflexes were

7

normal, she moved all extremities without difficulty, and that she exhibited good grip strength. (TR 226). His diagnosis was recurrent back pain out of proportion to physical examination and anxiety. (TR 227). Plaintiff saw a consultative examiner, Dr. Lester, on August 26, 2003. (TR 232). Dr. Lester noted that Plaintiff described "intractable cervical and lumbar pain" due to nerve root compression and that Plaintiff denied any weakness or parasthesias (numbness) in her arms and legs. (TR 232). On physical examination, Dr. Lester noted that Plaintiff exhibited "significant tenderness to palpation" in her cervical region, full range of motion in her neck "somewhat limited" due to pain, full reflexes, and normal muscle strength in her upper extremities and lower extremities. (TR 232). His diagnosis was cervical and lumbar radiculopathy due to nerve root compression, for which he prescribed epidural steroid injections in her cervical and lumbar spines. (TR 232). This diagnosis could, of course, account for Plaintiff's statements at her hearing and to her treating and consultative physicians of an inability to lift or grip with her right arm and of pain and numbness in her right hand and arm. Radiculopathy is "a disease of the nerve roots." Dorland's Illustrated Medical Dictionary 1562 (30th ed. 2003). Cervical radiculopathy can result in pain, numbness or weakness in the shoulder, arm, wrist, or hand. <http://orthoinfo.aaos.org/fact/thr_report.cfm?Thread_ID+179>.

However, the medical evidence did not clearly show the existence of a separately-identifiable hand or arm impairment. Thus, the ALJ did not err in failing to find that Plaintiff has a severe hand or arm impairment. Indeed, Plaintiff does not indicate that any physician specifically diagnosed a hand or arm impairment. She relies entirely on intermittent findings

by physicians of decreased strength or sensation in her right hand and/or arm. As Defendant appropriately points out, Plaintiff inconsistently asserts in her brief that the treating and consultative physicians' notations of decreased strength or sensation in her right hand and/or arm are related to her cervical degenerative disc disease. (Plaintiff's Brief, pp.11-12). No error occurred in this respect.

Plaintiff contends that the ALJ erred in failing to find that she has a severe impairment due to migraine headaches. At her hearing, Plaintiff testified that she had headaches once a week lasting four hours at a time. (TR 580-582). Plaintiff stated that she had begun new medication that decreased the frequency of her headaches. (TR 579). The medical record reflects that Plaintiff sought treatment for headaches in September 2002, and a CT scan was reportedly normal. (TR 173). She was prescribed non-narcotic pain medication for cephalgia of an unknown origin. (TR 173). Plaintiff complained of headaches again in March 2003 and stated that her headaches began after she finished physical therapy. (TR 169). Her treating physician, Dr. Shearer, noted that the headaches Plaintiff described were probably migraine-type headaches for which he prescribed daily medication. (TR 169). Plaintiff did not show up for her next appointment with Dr. Shearer in July 2003 and there are no further records of treatment by this physician. (TR 167). Plaintiff complained to Dr. Reitz of frequent headaches in June 2003, for which medication was prescribed. (TR 212). However, at her follow-up visit in July 2003, Plaintiff reported that she had voluntarily stopped taking the prescribed medication. (TR 210). Dr. Reitz prescribed an anti-depressant medication in July 2003. (TR 210). However, Plaintiff also reportedly stopped taking this

medication and cancelled her next appointment. (TR 209-210). Plaintiff sought emergency room treatment for a headache in August 2004. A CT scan of her head was normal. (TR 536). She was discharged after taking pain medication. (TR 542).

The medical record shows that Plaintiff did not persistently seek medical treatment for ongoing headaches. There is substantial evidence in the record to support the ALJ's implicit finding that her headaches did not significantly affect her ability to work and did not constitute a severe impairment.

V. Steps Three and Four

At the third step of the requisite sequential evaluation procedure, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. §§ 404.1520(d), 416.920(d). Bowen, 482 U.S. at 141. "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled." Id.

The ALJ's decision reflects consideration at step three of the medical evidence with respect to Plaintiff's mental impairments and whether those impairments satisfy or are at least equal in severity to the listings at 12.04 and 12.06. However, the ALJ's decision contains no discussion of the listing corresponding with the finding that Plaintiff has a severe impairment due to degenerative disc disease of her cervical spine. The ALJ merely stated his conclusion that Plaintiff's impairments are "not 'severe' enough to meet or medically equal, either singly or in combination to [sic] one of the impairments listed in Appendix 1,

Subpart P, Regulations No. 4." (TR 18).  Plaintiff contends that this error requires reversal of the Commissioner's decision and remand.

The Commissioner implicitly concedes that the ALJ failed to include in the decision an analysis of the Plaintiff's severe impairment due to degenerative disc disease in relation to the listing of impairments.  In <u>Clifton v. Chater</u>, 79 F.3d 1007, 1009 (10th Cir. 1996), the Tenth Circuit Court of Appeals addressed a similar deficiency in an ALJ's decision.  The court stated that under the provision governing judicial review of administrative decisions in 42 U.S.C. § 405(b)(1) the ALJ "was required to discuss the evidence and explain why he found that appellant was not disabled at step three." Because the ALJ's decision contained no such analysis, the court reversed the Commissioner's decision, finding that the ALJ had stated only a "bare conclusion" which was "beyond judicial review." <u>Id.</u>

The Commissioner, however, relies on the Tenth Circuit's more recent decision in <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729 (10th Cir. 2005), in asserting that the ALJ's error in Plaintiff's case was harmless in view of the ALJ's findings in the remainder of the decision. In <u>Fischer-Ross</u>, the circuit court recognized that reversal of an ALJ's decision for failing to include a step three analysis is not always required and that reversal "would extend <u>Clifton</u> beyond its own rationale" where the ALJ "provides detailed findings, thoroughly reviewed and upheld by the district court, that confirm rejection of the listings in a manner readily reviewable" by a court. <u>Id.</u> at 733-734.

In <u>Fischer-Ross</u>, the circuit court reviewed the ALJ's RFC findings at step four and five and concluded that these findings clearly showed the claimant was not qualified as

presumptively disabled under the listings at step three. <u>Id.</u> at 734-735.  In Plaintiff's case, the ALJ found at step four that Plaintiff had the RFC to occasionally lift or carry 50 pounds and 25 pounds frequently and perform occasional stooping but that she was unable to perform work activity requiring frequent, prolonged, or extreme pressure, bending, or twisting of the spine and had "no good hearing on the left side." (TR 22).[2]  The ALJ further found that Plaintiff's RFC for work was limited by her mental impairments and that she could "carry out simple and detailed instructions but not maintain attention and concentration for extended periods of time" or "work alone" although she could "perform at least simple tasks with regular supervision of the work site." (TR 22-23).   The ALJ's decision does not discuss which portions of the medical evidence were relied upon in reaching the RFC determination.  Rather the ALJ merely concludes that Plaintiff's

> physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously mentioned restrictions.  Given the objective medical evidence in the record, the Administrative Law Judge finds that the claimant's residual functional capacity is reasonable and that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms.

(TR 22).    This conclusion does not provide sufficient explanation to overcome the deficiency at the third step with respect to the listings.  Moreover, the ALJ compounded his error at step three by failing to include a sufficient explanation of his credibility determination with respect to Plaintiff's subjective complaint of disabling pain.  The ALJ

---

[2]This RFC finding appears in the body of the decision.  In the actual findings section of the decision, the RFC finding is truncated and apparently incomplete. (TR 25).

merely states in the decision that he had "given full consideration" to Plaintiff's unidentified "subjective complaints" and that Plaintiff was "not totally credible" because "[t]he record includes evidence strongly suggesting that the claimant has exaggerated symptoms and limitations." (TR 22). The ALJ did not point to any specific evidence in the record to support this conclusion. The ALJ also suggested that "the restrictions indicated by the claimant's treating physician are consistent with those determined in this decision." (TR 22). Again, there is no reference to any treating physician's records, and no support for this conclusion is found in the record. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted). In the absence of a discussion, linked to specific evidence in the record, of the rationale for the ALJ's conclusions, the Commissioner's decision is not amenable to judicial review. It must be noted in this connection that the ALJ's finding that Plaintiff had "no good hearing on the left side" (TR 22) is not supported by any evidence in the record. Plaintiff described to her treating and consultative physicians a difficulty with right-sided hearing only. (TR 216, 170). The ALJ's multiple errors in this case require reversal of the Commissioner's decision and remand for further administrative proceedings to correct the errors and provide an adequate analysis.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's applications for disability insurance and supplemental security income benefits and REMANDING the case to the Commissioner for further administrative proceedings consistent with this Report and Recommendation. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before       June 13th      , 2006, in accordance with 28 U.S.C. §636 and LCvR 72.1. The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this       24th       day of       May       , 2006.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE